799 A.2d 689

SANDRA DIANA, AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS–AT–LAW OF FRANK DIANA, DECEASED; AS ADMINISTRATRIX OF THE ESTATE OF FRANK DIANA, DECEASED; AND INDIVIDUALLY, PLAINTIFF–RESPONDENT, v. RUSSO DEVELOPMENT CORPORATION, DEFENDANT–APPELLANT/THIRD–PARTY PLAINTIFF, AND LAWRENCE RUSSO, JR., DEFENDANT–RESPONDENT/THIRD–PARTY PLAINTIFF, AND KKD IMPORTS, INC., T.F. SLOAN GROUP, T/A T.F. SLOAN COMPANY, DEFENDANTS–RESPONDENTS, AND THE BILCO COMPANY, AND BOROUGH OF CARLSTADT, DEFENDANTS, v. FEDERAL INSURANCE COMPANY, THIRD–PARTY DEFENDANT/RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 30, 2002—Decided June 20, 2002.

148

Before Judges CONLEY, LEFELT and LISA.

*John G. Tinker, Jr.*, argued the cause for appellant (*Leary, Bride, Tinker & Moran*, attorneys; *Mr. Tinker*, on the brief).

*August R. Soltis*, argued, the cause for respondent Sandra Diana (*Iulo & Soltis*, attorneys; *Mr. Soltis*, on the brief).

*John S. Fitzpatrick,* appeared for respondent Lawrence Russo, Jr. (*Fitzpatrick, Reilly, Supple & Gaul,* attorneys) but submitted no brief.

*Jerald J. Howarth,* appeared for respondent T.F. Sloan Company (*Hahn & Howarth,* attorneys) and relied on the brief filed on behalf of appellant (*Leary, Bride, Tinker & Moran*).

The opinion of the court was delivered by

LEFELT, J.A.D.

Frank Diana fell to his death on July 22, 1997, while ascending a fixed vertical steel ladder attached to a concrete block wall leading to a Bilco roof hatch. Plaintiff, Frank's wife Sandra, sought compensation from defendant Russo Development Corporation, the building's general contractor, and several other defendants. We granted Russo Development Corporation's motion seeking leave to appeal in order to review the trial court's determination denying summary judgment to the corporation on the basis that the hatch and ladder were not improvements to real property under the statute of repose, *N.J.S.A.* 2A:14–1.1. Thus, the sole issue presented by this interlocutory appeal is whether the hatch and ladder are improvements to real property and entitled to protection under the statute of repose. We answer this question affirmatively and reverse that portion of the trial court's decision.

I.

The building containing the Bilco hatch and ladder was constructed between 1984 and 1986. Plaintiff's complaint was not filed until August 6, 1998, and thus Frank's fall occurred more than ten years after the hatch and ladder were incorporated into the building. At the time of the fall, Frank was working for Temprite doing heating and air-conditioning maintenance and repairs on the roof of the building in question. Defendant Law-

rence Russo had leased the portion of the building where the accident occurred to defendant KKD Imports, Inc., which had employed Temprite to perform the work on the roof.

It is not clear exactly how the accident occurred. It appears that Frank had gone up and down the ladder several times before the tragic fall. Apparently, he had lowered rope from the roof and was going to pull a nitrogen tank to the roof from a position on the roof. Co-workers heard a "bang" and saw a tank regulator on the metal stair platform with Frank lying on the floor some twenty-five feet below the roof.

Plaintiff's expert claimed that the hatch cover was installed backwards and the fixed steel ladder was defective in design because it failed to incorporate a cage or other fall protection.

## II.

■ The Statute of Repose was adopted in 1967 " 'to limit the expanding liability of contractors, builders, planners and designers.' " *Ebert v. South Jersey Gas Co.*, 157 *N.J.* 135, 138, 723 *A.*2d 599 (1999) (quoting *Horosz v. Alps Estates, Inc.*, 136 *N.J.* 124, 128, 642 *A.*2d 384 (1994)). Rather than barring a remedy, the statute prevents a cause of action from arising. *Hein v. GM Constr. Co., Inc.*, 330 *N.J.Super.* 282, 286, 749 *A.*2d 422 (App.Div.2000). The Supreme Court has counseled that the statute should be construed "as applying to all who can, by a sensible reading of the words of the act, be brought within its ambit." *Rosenberg v. Town of North Bergen*, 61 *N.J.* 190, 198, 293 *A.*2d 662 (1972). The Court noted that there seemed to be "no reason not to include within the favor of the statute all [architects, contractors and the like] whether they be planners and builders of structures, roads, playing fields or aught else that by broad definition can be deemed 'an improvement to real property.' " *Ibid.*

In pertinent part, the statute provides: "[n]o action, .... to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property" can be brought against "any person performing or

furnishing the design, planning, surveying, supervision of construction or construction" more than ten years after the "performance or furnishing of such services and construction." *N.J.S.A.* 2A:14–1.1(a); *See E.A. Williams, Inc. v. Russo Development Corp.*, 82 *N.J.* 160, 170–71, 411 *A.2d* 697 (1980) (discussing the statutory structure).

Before, proceeding to address the sole issue at hand, we first clarify what we need not and do not decide in this appeal. The statute not only requires that damages arise from "deficiencies in design, plan supervision, or construction of the improvement, but also that those deficiencies be related to a resulting condition which is itself 'defective and unsafe.' " *E.A. Williams, supra,* 82 *N.J.* at 169, 411 *A.2d* 697. The statute applies to any injury, for which suit is brought, "arising out of the defective and unsafe condition of an improvement to real property." *N.J.S.A.* 2A:14–1.1(a). If the plaintiff cites a particular defect or error that does not constitute an unsafe condition, the statute does not apply. For example, in *E.A. Williams* the Court found that a surveyor's "error [in placing a building on a lot] did not create a hazardous or unsafe condition in the building but rather resulted in its functional impairment with consequential economic losses entailed in its correction." *Id.* at 172, 411 *A.2d* 697. No party to this litigation asserts that the deficiencies plaintiff alleged regarding the hatch and ladder did not create a defective and unsafe condition. Thus, this statutory limitation is not at issue.

To be protected by the statute, a particular defendant's activity in connection with the installation of the claimed improvement must be that of designing, planning, supervising or constructing the improvement. *Santos v. Hubey Corp.*, 236 *N.J.Super.* 608, 611, 566 *A.2d* 588 (Law Div.1989). If the defendant only manufactured or sold a product, the protections of the statute would not apply. *Id.* at 612, 566 *A.2d* 588. Here, no one contests that Russo Development Corporation supervised the construction of the building in question. Thus, it is clear that the corporation's

work falls within the ambit of those activities the Legislature intended to protect by enacting the statute of repose.

The statute also does "not apply to actions against any person in actual possession and control as owner, tenant, or otherwise ... at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury ... for which the action is brought." *N.J.S.A.* 2A:14–1.1(a).

In this appeal, Russo Development Corporation and plaintiff both briefed their positions vis-a-vis this exception to the statute. Plaintiff contends that the corporation was still in control of the building when the accident occurred. The corporation, however, contends it never owned the property, was not in possession and control of the building at the time of the accident, and submits various supportive documents.

We point out that Edward Russo certified that from the purchase of the property in 1983 until 2000, "defendant Russo Development Corporation [had no] ownership interest in the property." In apparent conflict with this statement, the April 22, 1986, Carlstadt certificate of occupancy for the building in question indicates that the owner was "Russo Development Corp." Most of the later documents reveal that the corporation was dissolved and that Lawrence Russo was the owner of the building at the time of the accident. Unfortunately, however, Russo used an unincorporated business name "Russo Development Company," thus, minimally, creating some confusion.

Nevertheless, the trial court declined to decide this issue. Considering that we have no decision to review, we decline to exercise our original jurisdiction and elect not to decide whether the corporation was an owner in possession when the accident occurred and thus not entitled to statute of repose protection. We leave this determination to the trial court upon remand.

### III.

The sole question we review is whether the Bilco hatch and ladder constitute improvements to real property covered by the

statute of repose. We first note that the ladder serves no purpose except to provide access to the hatch and the building's roof. The ladder is completely associated with the hatch and together they constitute a single system designed to obtain access to the roof from the rented premises. Thus, we do not consider the ladder and hatch separately and determine whether this system constitutes an improvement to real property.

The motion judge in denying the corporation's motion concluded that "the hatch and the ladder, are still ... mass-marketed items that do not constitute improvements." The judge also concluded that the hatch could not be "considered integral to the building."

The fact that injury was caused by a mass-produced, brand-name item does not in and of itself render the statute of repose inapplicable. Much construction in a home involves so called "mass-produced" items. For example, windows and doors are often mass-produced, as are many individual parts of a building. This condition alone does not remove these items from the statute of repose.

In *Rolnick v. Gilson & Sons, Inc.*, 260 *N.J.Super.* 564, 566, 617 A.2d 288 (App.Div.1992), which dealt with a mass-produced attic ventilation fan that caused plaintiff's injury, Judge Pressler made clear that the defective fan "was not an integral component of the air conditioning system." In that case, the fan was an option that a consumer could purchase along with the air conditioning system. The fan was, therefore, not part of the air conditioning system that had been designed and installed by defendant and was for that reason not protected by the statute of repose.

In *Rolnick* "a different conclusion might obtain if the appliance were an integral component of a basic system designed and installed by the contractor, that is, the heating, plumbing, electrical or air conditioning systems." *Id.* at 568, 617 A.2d 288. "[A] single appliance, standing on its own, as it were, is not an improvement within the intendment of this statute." *Ibid.* Thus, Judge Pressler likened the attic fan to a dishwasher, clothes dryer

or any other home appliance unessential to structural or system function.

We consider whether an alleged improvement is integral to another system or structure usually when the alleged improvement is a component of an acknowledged improvement. In these cases, we look to whether the item is integral to the system or structure that is clearly within the protection of the statute of repose. In *Wayne Township Bd. of Educ. v. Strand Century, Inc.*, 172 *N.J.Super.* 296, 300, 411 *A*.2d 1161 (App.Div.1980), for example, we found a dimmer panel in an auditorium to be an improvement to real property. In that case, there was no question that the auditorium's electrical system would be an improvement to real property. Thus, we found the dimmer panel to also qualify because it was "an integral part of the permanent electrical system of the auditorium and was 'required for the structure to actually function as intended.'" *Ibid.* (quoting *Brown v. Jersey Cent. Power & Light Co.*, 163 *N.J.Super.* 179, 195, 394 *A*.2d 397 (App.Div.1978), *certif. denied,* 79 *N.J.* 489, 401 *A*.2d 244 (1979) (involving a transfer switch assembly cabinet and its internal components that controlled the opening and closing of the circuits for a missile site's internal power source)). An elevator within a building, as another example, is an improvement of real property within the intendment of the statute of repose. *Santos v. Hubey Corp.*, 236 *N.J.Super.* 608, 611, 566 *A*.2d 588 (Law Div.1989); *Hall v. Luby Corp.*, 232 *N.J.Super.* 337, 339, 556 *A*.2d 1317 (Law Div.1989). Elevators in commercial buildings are "essential to the function of the structure and its basic systems." *Lewis v. Hopewell Valley Racquet Club*, 269 *N.J.Super.* 71, 75–6, 634 *A*.2d 568 (App.Div.1993).

This rationale distinguishes systems and structures that are necessary to the normal functioning of a particular improvement from optional frills or items not necessary for the structure's function. We attempt to distinguish these integral parts of systems, necessary for some larger structure, from appliances, equipment, furniture, production machinery and other similar chattels

that are generally brought to a building after it is suitable for occupancy. *Brown, supra,* 163 *N.J.Super.* at 197, 394 *A.*2d 397. *See also Woessner v. Air Liquide Inc.,* 242 *F.*3d 469, 476 (3d Cir.2001) (finding a motor control center integral to the purpose of the building). Thus, furniture, production machinery and appliances are generally not within the protection of the statute. *Brown, supra,* 163 *N.J.Super.* at 196–97, 394 *A.*2d 397; *McCalla v. Harnischfeger Corp.,* 215 *N.J.Super.* 160, 169, 521 *A.*2d 851 (App. Div.), *certif. denied,* 108 *N.J.* 219, 528 *A.*2d 36 (1987) (an overhead crane was not an improvement but was "merely a large piece of 'production machinery'. . . ."). An electrical contractor who wired a meat grinding machine to the wall of a factory, as another example, would not be covered by the statute. *Brown, supra,* 163 *N.J.Super.* at 194–95, 394 *A.*2d 397 (discussing an opinion by Judge Dreier in *Ilich v. John E. Smith Sons Co., Inc.,* 145 *N.J.Super.* 415, 367 *A.*2d 1216 (Law Div.1976)).

Not all improvements to real property, however, are integral or essential components of a building. Some improvements are simply features or attributes of a building. In addition, there are improvements, like roads, bridges or utility lines that depending on the factual circumstances of the case, may be completely separate from any building, connected to a building from the outside, or adjacent to a building.

When considering whether these items are within the protection of the statute of repose, it is often not helpful to focus on whether the claimed improvement is integral or essential to any building's functioning because they frequently are not. For example, a glass side light of the same height and almost the same width as an adjoining glass door was found subject to the statute in *O'Connor v. Altus,* 67 *N.J.* 106, 335 *A.*2d 545 (1975). It was not argued that this glass sidelight was somehow integral to the building or essential to the functioning of the building. Rather, the sidelight was simply a feature of the building and closely related to its structure. A negligently paved road, as another example of these types of improvements, was found subject to the statute in *Rosen-*

*berg v. Town of North Bergen, supra,* 61 *N.J.* at 190, 293 *A.*2d 662. *See also Richards v. Union Bldg. & Const. Corp.,* 130 *N.J.Super.* 127, 325 *A.*2d 831 (App.Div.1974) (negligently constructed roadway subject to the statute of repose); *Kozikowski v. Delaware River Port Auth.,* 397 *F.Supp.* 1115 (D.N.J.1975) (a bridge "being, in legal effect, the same as a road ..." is an improvement to real property). *See also Lewis v. Hopewell Valley Racquet Club, supra,* 269 *N.J.Super.* at 73, 634 *A.*2d 568 (finding in ground swimming pool with diving stands an improvement to real property). Usually, it cannot reasonably be asserted that these improvements are essential to any building's functioning.

■ To deal with these items, a different test is often utilized. Generally, we look to see if the asserted improvement permanently increases the property's value. *Ebert v. South Jersey Gas Co.,* 157 *N.J.* 135, 139, 723 *A.*2d 599 (1999) (finding a gas service line to a residential property an improvement to real property and subject to the statute of repose). Among the relevant specific factors considered are " 'whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property, and is permanent in nature.' " *Ibid.* (quoting *Van Den Hul v. Baltic Farmers Elevator Co.,* 716 *F.*2d 504, 508 (8th Cir.1983)). Because the hatch and ladder system was a feature of the leased space and closely connected to the building's structure, we believe this test to be most relevant in this instance, and we are convinced that the system satisfies the test.

IV.

■ The hatch and ladder system appears to have been installed during the construction of the building and was not added later. The system provides a means of moving from the leased space to the roof where the air conditioning and heating equipment had been installed. *See Gilliam v. Admiral Corp.,* 111 *N.J.Super.* 370, 268 *A.*2d 338, (Law Div.1970) (steel ladder installed at rear of building from ground to top of second floor acting as fire escape

was improvement to real property); *Collins v. Trinity Indus., Inc.,* 861 *F.*2d 1364, 1365 (5th Cir.1988) (a caged ladder was an improvement to the property because it provided "a means of moving from one level to another.").

Hatch covers have also been found to be improvements to real property where they were designed to make the property more useful, for example, by enabling access to the second level of a fuel pool area for the loading of equipment and fuel. *Dunmire v. Bechtel Power Corp.,* 1998 WL 1997746, at *4 (Mich.Ct.App.), *appeal denied,* 459 *Mich.* 909, 589 *N.W.*2d 283 (1998).

While the ladder and hatch system could be removed from the wall and roof relatively easily, there was no indication that the structure was not designed to be a permanent feature of the leased warehouse space. Today, very few structures can be considered permanent, in the sense that the structure cannot be removed. Entire buildings can be razed and rebuilt, or gutted to the foundation and rebuilt. Walls can be removed and replaced with windows or doors, and windows or doors can be removed and replaced with walls. When looking at whether the structure is permanent, we must therefore consider whether at the time of its construction it was intended to remain part of the structure indefinitely. If so, it can be considered permanent.

Plaintiff argues that there was no proof that the hatch and ladder would increase the property's tax assessment value, as the swimming pool did to the swim club's property in *Lewis v. Hopewell Valley Racquet Club, supra,* 269 *N.J.Super.* at 76, 634 *A.*2d 568. However, value is not an exact science but rather relative. Here, the claimed improvement must create value to someone utilizing the particular improvement. It need not in all cases affect the tax assessment value. To us, it is not significant that a ladder could easily reach the roof from outside this two-story structure. For anyone who must be able to ascend the roof in all types of weather conditions, the inside ladder and hatch would constitute some value and enhance the property from the user's perspective.

Clearly, labor and money were needed to install this feature, which was neither a repair nor a replacement. The record reflects that the roof hatch cost $350 in 1985 and after the accident to correct the backward roof hatch alignment the cost was $250.

Thus, we conclude that the ladder and hatch system enhanced the use of the property and cost labor and money to build. This feature was part of the original property and did not constitute a repair or replacement. It also appears to be a permanent feature of the building and adds some value to the property. Accordingly, we find that the ladder and hatch system is an improvement to real property and protected by the statute of repose. *N.J.S.A.* 2A:14–1.1.

Reversed and remanded.